Pamela B. Petersen
NV Bar No. 6451
Amy L. Nguyen (*Pro Hac Vice pending*)
Peter Brown (*Pro Hac Vice pending*)
AXON ENTERPRISE, INC.
17800 N. 85th Street
Scottsdale, AZ 85255-9603
Telephone: (623) 326-6016
Fax: (480) 905-2027
ppetersen@axon.com
amynguyen@axon.com
pbrown@axon.com

*In Association With:*

Meng Zhong
NV Bar No. 12145
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 474-2636
Fax: (702) 216-6259
mzhong@lrrc.com

*Attorneys for Plaintiff Axon Enterprise, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| AXON ENTERPRISE, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> LUXURY HOME BUYERS, LLC d/b/a/ ACCREDITED FINANCIAL SERVICES, a Nevada Limited Liability Company, <br><br> Defendant. | ) <br> ) <br> ) Case No.: 2:20-cv-01344 <br> ) <br> ) <br> ) COMPLAINT <br> ) <br> ) JURY DEMAND <br> ) <br> ) <br> ) <br> ) <br> ) |

Plaintiff Axon Enterprise, Inc. ("Axon"), formerly TASER International, Inc. ("TASER"),[1] complains and alleges as follows:

## INTRODUCTORY STATEMENT

1.     Axon is the world's leading manufacturer of Conducted Energy Weapons or "CEWs" under the TASER® brand. TASER CEWs are deployed by more than 18,000 law enforcement, private security, and military agencies worldwide. To date, more than 1 million TASER CEWs have been sold in 107 countries.

2.     The TASER brand is well-recognized worldwide and associated with high quality, dependable, and cutting-edge technology and service that enhances officer and public safety. Defendant has misappropriated TASER trademarks, caused significant confusion in the market as to the source of products, warranties and services, misrepresented an alleged affiliation with TASER, and falsely advertised Defendant's ability to "factory refurbish" TASER CEWs to "like new" condition, among other blatant misrepresentations, thereby compromising safety and damaging the goodwill symbolized by TASER trademarks and reputation.

## PARTIES

3.     Axon is a Delaware corporation with its principal place of business at 17800 N. 85th Street, Scottsdale, Arizona 85255.

4.     Luxury Home Buyers, LLC, doing business as Accredited Financial Services ("Accredited Financial" or "Defendant"), is a Nevada limited liability company. Its corporate office is located at 8635 W. Sahara Ave. #614, Las Vegas, Nevada 89117.

---

[1] Effective April 5, 2017, TASER changed its name to Axon.  TASER® is a registered trademark of Axon. As an acronym, TASER is always written in all capital letters, including in the former company name.

**JURISDICTION AND VENUE**

5.      This is a civil action arising under 15 U.S.C. § 1114 *et seq.* for trademark infringement, false designation of origin, cybersquatting, and false advertising, and under N.R.S. § 598.0915 for deceptive trade practices. This Court has subject matter jurisdiction over the federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). The Court has jurisdiction over Axon's state law deceptive trade practices claim under 28 U.S.C. §§ 1338(b) and 1367(a).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the Defendant maintains its principal place of business in this judicial district and has marketed and sold the products and services at issue in this action within this judicial district.

**NATURE OF THE DISPUTE**

**TASER CEWs – Historical and Technical Background**

7.      TASER was founded in 1993 with the strategic objective of protecting life by providing less-lethal force solutions to a potentially violent confrontation. To that end, the company now known as Axon researches, designs, assembles, and markets battery-powered CEWs that enable law enforcement officers to protect themselves while reducing the risk of serious injury or death to both officers and suspects alike.

8.      TASER revolutionized policing with the 1999 release of its M26™ CEW, the first electrical weapon to incorporate the company's patented Neuromuscular Disruption technology that affects both the sensory and motor nervous systems to induce motor-nerve mediated neuro-muscular incapacitation or "NMI".  Continued research and innovation resulted in the patented Shaped Pulse™ waveform technology utilized by the TASER X26™ CEW released in May 2003, which allowed a substantial reduction in CEW size and delivered power. The TASER X26, also known as the X26E, became the gold standard single-shot CEW for the next decade.

9.    To cause temporary incapacitation in the field, a TASER X26 deploys two small metal darts or probes from a cartridge via compressed nitrogen, with electrical impulses transmitted into the target through very thin insulated trailing wires.  The X26 CEW is designed to transmit stimuli through very short duration (≈100 microseconds) low charge (≈100 microcoulombs) electrical pulses to interfere with the command and control systems of the body.



10.    The TASER X26 CEW is a sophisticated electrical weapon system that produces an open-circuit peak arcing voltage of around 50,000 volts, as is necessary to allow the electricity to arc across an air gap up to ≈2 inches of clothing to deliver an electrical charge to a person when the darts do not penetrate the skin.  However, as often misrepresented by the media (and Defendant) and misunderstood by the public, the peak output voltage (what actually enters or is delivered to the body) is only ≈1,400 – 2,520 volts.  It is not the voltage but the total number of delivered electrons that causes incapacitation.

11.    TASER X26 CEWs—like all CEW models and other complex electrical consumer devices—wear out over time.  TASER CEWs are composed of hundreds of individual electronic components, several printed circuit boards, and their associated interconnections.  The internal components represent two unique electronic circuit types: the high voltage section and the controller section. The high voltage section converts relatively low battery power into a complex

4

precision-shaped high voltage, low current output that relies on electromagnetic components, transformers, high voltage coils, electrolytic, and polymer capacitors. The controller section is an infinitely more complex sub-circuit system consisting of multiple microprocessors responsible for keeping track of time, displaying information to the user, maintaining the accountability systems of the device, and controlling the output of the high voltage system.



12.    A fundamental difference between TASER CEWs and other electronic consumer products is that CEWs are regularly exposed to far harsher conditions and constant physical stress associated with law enforcement work.  CEWs are dropped, jarred about on an officer's belt, used in violent confrontations, and exposed to extreme heat, cold, rain, and dust – all of which can contribute to general wear and tear on the high-voltage component. Over time, such components wear and aging can create a risk of decreased effectiveness or risk of sudden electrical failure in the field thereby compromising officer safety.

13.    TASER CEWs, by design, cannot be disassembled once manufactured.  It is through this attribute that the outer body of the CEW gains strength to protect from drops, shock,

resists moisture, and protects the electrical circuitry.  This also prevents the examination and replacement of internal parts or aging components not visible from an external inspection.

14.     Accordingly, Axon has established a 5-year useful life for its CEW products and strongly discourages law enforcement use of CEWs beyond their 5-year useful life as a critical officer safety recommendation.  Axon does not service or repair weapons older than five years and does not provide its product liability insurance certificate to agencies fielding weapons of this age.  Nor does Axon continue to provide firmware updates for outdated and discontinued CEWs.  The last firmware update for the TASER X26E CEW was Version 24 released in early 2014.

15.     At year-end 2014, more than a decade after its release in 2003, Axon officially called the "end of life" of the TASER X26E CEW.  At that time, Axon ceased all manufacture and sales of the X26E CEW.  Today, all X26E manufacturer warranties and extended warranties have expired.

16.     During the long run of the X26E CEW, technology advanced and electronics improved leading to the invention of new TASER Smart Weapons. These include the X2™ CEW, a dual cartridge (two shot) weapon released in April 2011, and the next generation X26P, a single cartridge weapon released in January 2013 to replace the older model analog X26E CEW.  Both of these Smart CEWs incorporated significant technological advancements, most notably, charge metering.

17.     Charge metering measures each electrical pulse and then adjusts the succeeding pulse as necessary based upon electrical parameters to maintain consistency of the delivered charge to the subject. This allows TASER X2 and X26P models to deliver a more precisely metered charge creating a more predictable NMI response, regardless of whether the CEW probes are embedded in a target's skin or lodged in clothing. This innovation allowed for the elimination of

excess charge in the older model X26E output necessary to arc through a subject's clothing, thereby increasing safety margins for skin penetrations.

18.     The electrical waveforms of TASER Smart Weapons also differ from the older X26E waveform in pulse duration. Because the overall waveform duration of the newer Smart CEWs is shorter, it provides more motor-nerve mediated muscle lockup at similar charge to older models.

**TASER Trademarks**

19.     Several of Axon's federally registered trademarks are at issue in this case. Axon is the exclusive owner of the federal trademark with Registration No. 3010500, issued by the United States Patent and Trademark Office ("USPTO") on November 1, 2005 for the stylized TASER name mark ("TASER Mark"):

# TASER

The Registration Certificate for the TASER Mark, together with its January 6, 2017 renewal, is attached as Exhibit A and incorporated herein.

20.     Axon's TASER Mark has been used continuously since January 1994. The TASER Mark distinguishes Axon's CEWs and is well-known to users and purchasers of TASER CEWs as identifying Axon merchandise.

21.     Axon is also the exclusive owner of the federal trademark with Registration No. 3693311, issued by the USPTO on October 6, 2009 for the standard TASER character mark as applied to, among other things, CEWs ("TASER CEW Mark"). The Registration Certificate for the TASER CEW Mark, together with its October 31, 2019 renewal, is attached as Exhibit B and incorporated herein.

22.    Axon's TASER CEW Mark has been used continuously since January 1994. The TASER CEW Mark distinguishes Axon's CEWs and is well-known to users and purchasers of TASER CEWs as identifying Axon merchandise.

23.    Axon is the exclusive owner of the federal trademark with Registration No. 3404298, issued by the USPTO on April 1, 2008 for the standard TASER character mark as applied to, among other things, CEW cartridges ("TASER Cartridge Mark"). The Registration Certificate for the TASER Cartridge Mark, together with its January 5, 2018 renewal, is attached as Exhibit C and incorporated herein.

24.    Axon's TASER Cartridge Mark has been used continuously since December 1999. The TASER Cartridge Mark distinguishes Axon's CEW cartridges and is well-known to users and purchasers of CEW cartridges as identifying Axon merchandise.

25.    Axon further is the exclusive owner of the federal trademark with Registration No. 3255255, issued by the USPTO on June 26, 2007 for the TASER Logo featuring a world globe with a lightning bolt through the center ("Globe Lightning Bolt Logo") as applied to, among other things, CEWs and related accessories. The Registration Certificate for the Globe Lightning Bolt Logo, together with its January 20, 2018 renewal, is attached as Exhibit D and incorporated herein.



26.    Axon's Globe Lightning Bolt Logo has been used continuously since June 2003. The Globe Lightning Bolt Logo distinguishes Axon's less-lethal TASER brand products and is well-known to users and purchasers of CEWs as identifying Axon merchandise.

27.     Defendant uses the TASER Mark, TASER CEW Mark, TASER Cartridge Mark, and Globe Lightning Bolt Logo (collectively, "the Registered Marks"), and other federally registered and common law trademarks of Axon, without authorization, on its various websites, advertising literature, and communications with law enforcement agencies throughout the United States.

**Wenger's Web of TASER Deception**

28.     Defendant Accredited Financial's sole Managing Member is Jeffrey R. Wenger ("Wenger").  According to Accredited Financial's website,[2] Defendant is a holding company for a number of "subsidiaries," including Accredited Security and Accredited Safety.  Upon information and belief, Accredited Security and Accredited Safety are not separate legal entities but are operated as "divisions" of Accredited Financial with Wenger as their "President and CEO".  Defendant's website provides links to separate websites for both Accredited Security and Accredited Safety.

29.     Defendant's website touts its "TASER® Buy-Back Program," linking to Accredited Security's website and stating:

---

[2] Defendant's websites include, among others:
http://www.accreditedfinancialservices.com
http://accreditedsecurity.com
http://www.accreditedsafety.com
http://www.accreditedsales.com
http://www.mrstungun.com and
http://www.misterstungun.com.



Through this program, Defendant encourages agencies to sell their outdated TASER X26E CEWs and other CEW models that are beyond their 5-year useful life instead of scrapping them as recommended by the manufacturer and contemplated by certain Axon upgrade discounts.

30.     Defendant then falsely describes Accredited Safety as an "Authorized TASER® Distributor," providing a link to that website and stating:



Neither Wenger, Defendant, nor any of Defendant's divisions, including, specifically, Accredited Safety, is an authorized TASER "distributor."

31.     Defendant has ignored cease and desist letters from Axon demanding that it stop using TASER "distributor" or TASER "dealer" phrases on its websites and in its advertising and

written communications with law enforcement and other CEW customers. Defendant's use of such terminology is misleading because it falsely implies a connection or affiliation between Defendant and Axon.

32.     Defendant also intentionally perpetuates the false perception of a relationship with Axon through the repeated, unauthorized use of the Registered Marks on its websites, in its advertising literature, and all of its customer communications. For example, Accredited Security's website prominently uses TASER Marks no fewer than eight times on its home page. By contrast, the Accredited Security mark appears only once.[3]

33.     Defendant also sells TASER CEWs on its Mr. Stungun websites— http://www.misterstungun.com and http://www.mrstungun.com—on which it falsely and repeatedly claims ownership of the TASER Mark stating, "TASER® is a Trademark of the Mister Stungun":



As with Defendant's other websites, the most prominently and frequently displayed trademarks on the Mr. Stungun websites are Axon's Registered Marks.

34.     The Globe Lightning Bolt Logo is prominently displayed on Accredited Security's homepage with the TASER Mark, neither of which Defendant is authorized to use:

---

[3] While the Accredited Security mark is accompanied by a registered trademark symbol (®), the USPTO's Trademark Electronic Search System reveals no marks registered under that name.



35.     Defendant's confusing use of the Registered Marks is not limited to its websites. Chiefs of Police have reported receiving letters from Accredited Security that make numerous misrepresentations about TASER CEWs and Defendant's alleged ability to refurbish them. For example, a January 2019 letter from Accredited Security to a police chief in New Jersey claims the TASER X26 is "*far better than − and far less expensive than every other TASER® model.* You can only get it here from us." (emphasis original). The letter concludes with a large version of the TASER Mark.

36.     Defendant has ignored cease and desist letters from Axon demanding that it stop misusing the Registered Marks, informing Defendant of Axon's exclusive rights concerning the Marks, and instructing Defendant on requirements for the proper use of TASER Marks, including that use of a TASER trademark must not imply that there is any kind of relationship between Defendant and Axon or that Axon is the origin of any of the "refurbished" products sold by Defendant.

37.     Defendant distributes false and misleading mail communications and sales literature to law enforcement agencies throughout the United States. Indeed, Defendant claims to "sell to law enforcement in all 50 states." Due to Defendant's misconduct, Axon has had to repeatedly clarify for law enforcement customers that Axon does not sponsor and is not affiliated with the Defendant.

38.     Despite Defendant's repeated assertions to the contrary, Axon is not associated or connected with Defendant in any way. Defendant is not licensed, authorized, sponsored, endorsed, or approved by Axon to sell or "refurbish" its products or use its Registered Marks in any of its advertising.

39.     Defendant's false and/or misleading representations include, but are not limited to the following:

- Defendant's TASER weapons are "factory refurbished," "professionally refurbished," refurbished "like new," and refurbished "to look and work like new"

- Defendant "reprograms" TASER CEWs "with the latest software"

- Defendant offers a 1-year "Repair or Replacement Guarantee on all refurbished TASER Weapons - even better than new!"

- The TASER X26E "wield[s] the highest degree of takedown power of total and absolutely unsurpassed effectiveness"

- The X26 CEW has "twice the power" as the X26P CEW

- TASER weapons have more "stopping power" and "a higher instant incapacitation rate than even a 9mm handgun!"

- TASER CEWs send "50,000 volts of pulsing current through the body"

40.     Not only are these statements false and misleading, they are dangerous. Fielding TASER CEWs beyond their 5-year useful life may result in electrical failure putting the user at an increased risk of harm. The worn-out or aging internal electrical components cannot be "refurbished" and will never work "like new."  The most Defendant can accomplish with used CEWs is to clean the external housing and contacts and replace the battery pack with 2014 firmware—something law enforcement agencies can do themselves.

41.     Axon's July 11, 2018, cease and desist letter to Defendant makes these misrepresentations and risks unmistakably clear. It also delineates how and why next-generation

TASER Smart Weapons deliver safety and effectiveness improvements over the retired X26 CEW, making Defendant's continued false advertising knowing and intentional.

**Defendant's Cybersquatting Misconduct**

42.    Internet Company, N.A. is a division of Defendant as stated on its own website—http://www.internetcompanyna.com. Internet Company exploits numerous domain names prominently and in an unauthorized fashion incorporating the Registered Marks and model names of Axon CEW products, including C2, X26, and X26C. Indeed, Defendant's CyberStation website, http://cyberstation.com/links.html, features a list of domains that it has registered, trafficked in, or used and that are confusingly similar to Axon's taser.com domain:

43.    Defendant's   http://www.tasers.org   website   features   a   similar   list   of   domains containing unauthorized uses of the TASER Mark that are confusingly similar to Axon's taser.com domain. Defendant has registered, trafficked in, or used, collectively with the domains identified in ¶ 42, the following "Infringing Domain Names":

BUYTASER.NET
C2TASER.ORG
C2TRADER.COM
GIRLSTASER.COM
HOWATASERWORKS.COM
LEGALTASER.COM
M18TRADER.COM
PINKTASER.NET
SELFDEFENSETASER.COM
SELFDEFENSETASER.NET
SECURETASER.COM
SILVERTASER.COM
SMALLTASER.NET
TASERACTION.COM
TASERBOY.COM
TASERCOMPANY.NET
TASERCHECKOUT.COM
TASERDEALERS.COM
TASERDISTRIBUTOR.COM
TASERFORGIRLS.COM
TASERFORWOMEN.NET
TASERFORSALE.NET
TASERGIRL.COM
TASERGIRLS.NET
TASERGUNSFORSALE.COM
TASERHANDGUN.COM
TASERHOLSTERS.NET
TASERLASER.COM
TASERLASERSIGHT.COM
TASERLAWS.NET
TASERORDER.COM
TASER-PARTIES.COM
TASERPARTY.ORG
TASERPROTECTION.NET
TASERS.ORG
TASERSFORWOMEN.NET
TASERSFORSALE.NET
TASERSHOPPING.COM
TASERSHOPPINGCART.COM
TASERSITE.NET
TASERSTORE.ORG
TASERSTUNGUN.COM
TASERSTUNGUN.ORG
TASERTRADER.COM
TASERVIDEO.NET
TASERWEAPON.COM
TASERWEAPONS.COM
TASER-X26C.COM
TAZERACTION.COM
TAZERGIRL.COM
TAZERGUY.COM
TAZERS.COM
TAZERSALES.NET
TAZERSTUNGUN.NET
TAZERSTUNGUN.ORG
TAZERWEAPON.COM
UNUSEDTASER.COM
UNUSEDTASERS.COM
USEDTASERFORSALE.COM
USEDTASERSFORSALE.COM
WOMANSTASER.COM
X26C-TASER.COM
X26CTASER.COM
X26-TASER.COM

15

44.     Defendant, through Internet Company, registered the domain name taser.org in 1999. This is an unauthorized use of the TASER Mark and is confusingly similar to the taser.com domain owned and used by Axon.

45.     Taser.org historically was a single page displaying the dictionary definition of "TASER" and a description of TASER weapons, their effects, and their uses.  Upon information and belief, Defendant began redirecting traffic from taser.org to accreditedsafety.com on or about 2018.  Today, the taser.org link immediately and automatically redirects traffic to Defendant's accreditedsafety.com website and an extensive catalog for ordering new and refurbished TASER CEWs, evidencing Defendant's bad faith intent to profit from the TASER Mark.

**COUNT ONE**

**TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(a)**

46.     Axon realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

47.     Axon is the exclusive owner of the Registered Marks.

48.     The Registered Marks are valid, protectable trade and service marks that have been registered as marks on the Principal Register in the USPTO.

49.     Defendant's use of the Registered Marks constitutes a reproduction, copying, counterfeiting, and colorable imitation of the Registered Marks and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's services and "refurbished" goods are manufactured, distributed or warranted by Axon, are associated or connected with Axon, or have the sponsorship, endorsement, or approval of Axon.

50.     Defendant has used marks confusingly similar to Axon's Registered Marks in violation of 15 U.S.C. § 1114. Defendant's activities have caused and, unless enjoined by this

Court, will continue to cause a likelihood of confusion and deception of Axon customers and the public, and will injure Axon's goodwill and reputation as symbolized by the Registered Marks, for which Axon has no adequate remedy at law.

51.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Registered Marks to Axon's irreparable injury.

52.     Defendant has caused and is likely to continue to cause substantial injury to the public and to Axon, such that Axon is entitled to injunctive relief and to recover Defendant's profits as well as Axon's damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114 – 1117.

## COUNT TWO

### FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

53.     Axon realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

54.     Defendant has made and incorporated false statements of fact into its websites, letters, literature and warranties regarding TASER CEWs.

55.     The statements made by Defendant in its advertising were for the purpose of influencing customers to buy Defendant's goods and services.

56.     The false statements of fact have actually deceived and have a tendency to deceive a substantial segment of Defendant's target audience. Such deception is material in that it is likely to influence purchasing decisions.

57.     Defendant has caused false statements to enter interstate commerce. As a result of Defendant's conduct, Axon has been and is likely to continue to be injured by Defendant's false statements in violation of 15 U.S.C. § 1125(a).

**COUNT THREE**

**FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)**

58.    Axon realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

59.    Axon is the exclusive owner of all right, title, and interest in and to the Registered Marks.

60.    Defendant's use of the Registered Marks is likely to cause confusion, cause mistake, or deceive as to affiliation, connection or association between Axon and Defendant, or as to the origin, sponsorship, or approval of Defendant's services or commercial activities by Axon.

61.    As a result of Defendant's conduct, Axon has been and is likely to continue to be injured by Defendant's false designation of origin in violation of 15 U.S.C. § 1125(a).

**COUNT FOUR**

**CYBERSQUATTING UNDER 15 U.S.C.  § 1125(d)**

62.    Axon realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

63.    Axon's Registered Marks, including the TASER Mark, were distinctive at the time of Defendant's registration of the Infringing Domain Names, including Defendant's 1999 registration of taser.org.

64.    The Infringing Domain Names are identical and confusingly similar to Axon's Registered Marks in violation of 15 U.S.C. § 1125(d).

65.    On or about 2018 and with the intent of commercial gain, Defendant began redirecting all traffic from taser.org to https://accreditedsafety.com, Defendant's website offering "new and refurbished TASER® weapons" for sale.

18

66.     Defendant has a bad faith intent to profit from the Registered Marks, especially the TASER Mark, because it intends to divert consumers from taser.com to taser.org and Defendant's other Infringing Domain Names for commercial gain and by creating likelihood of confusion with Axon as to the source, sponsorship, affiliation, or endorsement of taser.org, the other Infringing Doman Names, and Defendant's products and services.

67.     Defendant's bad faith is further shown by its willful infringement of the Registered Marks across its websites, in its communications with law enforcement, its false claims that it is an "Authorized TASER® Distributor," and its registration of, use of, and trafficking in Infringing Domain Names prominently incorporating the TASER Mark.

68.     Defendant's actions have damaged Axon and will continue to damage Axon, causing injury to Axon's reputation and goodwill.

69.     As a consequence of Defendant's willful infringement, Axon is entitled to recover from Defendant three times the amount of actual profits or damages, whichever is greater, as well as Axon's attorneys' fees in connection with this action.

70.     In addition to any other remedies requested herein or permitted by law, Defendant's conduct warrants that the Court order the forfeiture or cancellation of the Infringing Domain Names or the transfer of the Infringing Domain Names to Axon pursuant to 15 U.S.C. § 1125(d)(1)(C).

**COUNT FIVE**

**DECEPTIVE TRADE PRACTICES UNDER N.R.S. § 598.0915**

71.     Axon realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

72.     In the course of conducting its business, Defendant knowingly made false representations as to its affiliation, connection, and association with Axon. Defendant further knowingly made false representations as to the characteristics and benefits of and alterations to its goods.

73.     Defendant represented that its goods are of a particular quality (*e.g.*, refurbished "like new") when Defendant knows its goods are of another, lesser quality.

74.     Defendant disparaged Axon's CEWs by false and misleading representations of fact.

75.     Defendant's activities as set forth herein constitute deceptive trade practices in violation of Nev. Rev. Stat. § 41.600(2)(e) and § 598.0915.

76.     Defendant's deceptive trade practices have damaged Axon in an amount to be determined at trial.

77.     As a direct and proximate result of Defendant's actions, and the ongoing direct results of those actions, Axon has suffered and will continue to suffer irreparable injury to its business, reputation, and goodwill for which Axon has no adequate remedy at law.

78.     Axon is entitled to recover treble damages in addition to all costs and expenses including its reasonable attorneys' fees, pursuant to Nev. Rev. Stat. 41.600 and 598.0999.

## PRAYER FOR RELIEF

WHEREFORE, Axon respectfully requests that this Court enter judgment in its favor and against Defendant, as follows:

1.     For a permanent injunction enjoining and restraining Defendant, its officers, agents, servants, employees, attorneys, and those acting in concert with or on behalf of any of them, from:

a.  Using the Registered Marks or any confusingly similar name or mark as part of the corporate or fictitious name of any of Defendant's businesses;

b.  Using the Registered Marks or any confusingly similar name or mark in connection with any services, advertising, sales, or for any other reason;

c.  Using the Registered Marks or any confusingly similar name or mark in any domain name or on any website, or operating any website that contains the Registered Marks or any confusingly similar name or mark;

d.  Using the Registered Marks or any confusingly similar name or mark in any manner likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Axon; or in any manner likely to injure Axon's goodwill and/or reputation;

e.  Using the Registered Marks or any confusingly similar name or mark in any way that implies that Axon owns, sponsors, approves, or is otherwise affiliated with Defendant's services and "refurbished" goods;

f.  Targeting, sending unsolicited communications to, and/or directly advertising to Axon's customers by email, SMS text messaging, or any other form of direct communication in a manner that is false, misleading or likely to deceive customers into believing that Defendant is Axon or that Defendant's products and services are associated with, affiliated with, connected to, approved by, or sponsored by Axon; and

g.  Unfairly competing with Axon in any manner whatsoever;

2.  For a permanent injunction prohibiting Defendant's false advertising and deceptive trade practices;

3.      For compensatory damages in an amount sufficient to compensate Axon for the injuries proximately caused by Defendant's conduct;

4.      For disgorgement of Defendant's profits;

5.      For treble damages as provided by 15 U.S.C. § 1117(a) and Nev. Rev. Stat. 42.005 for Defendant's willful and deliberate infringement and false advertising;

6.      An order canceling or causing Defendant to forfeit the Infringing Domain Names or transferring ownership of the Infringing Domain Names to Axon as the owner of the Registered Marks;

7.      For attorneys' fees and costs pursuant to applicable law, including, without limitation, 15 U.S.C. § 1117(a) and Nev. Rev. Stat. 41.600; and

8.      Such other or further relief as the Court may deem proper.

## JURY DEMAND

Axon reserves its right to have all issues that are triable by a jury so decided in this case.

DATED this 20th day of July, 2020.

AXON ENTERPRISE, INC.

*/s/ Pam Petersen*
Pamela B. Petersen
NV Bar No. 6451
Amy L. Nguyen (*Pro Hac Vice pending*)
Peter Brown (*Pro Hac Vice pending*)
17800 N. 85th Street
Scottsdale, AZ 85255-9603

Meng Zhong
NV Bar No. 12145
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

*Attorneys for Plaintiff Axon Enterprise, Inc.*